OPINION OF THE COURT
David Goldstein, J.
This is an application by petitioner, as judgment creditor, for an order directing respondent to deliver and turn over the *549 sum of $1,337.65 from a designated checking account of Mr. Window, Inc. (Window), in full satisfaction of petitioner’s levy-on a judgment recovered in the Small Claims Part of this court.
The small claims proceeding was commenced against Murray Remodelers, Inc., d/b/a Mr. Window (Remodelers), and proceeded to trial before an arbitrator on July 6, 1987. The arbitrator awarded petitioner $1,200 plus interest, representing a return of her down payment for the furnishing of labor and materials.
In opposition to the turnover proceeding, defendant in the small claims action contends that Window and Remodelers are two separate and distinct legal entities — Window manufactures and sells windows, Remodelers is a licensed home improvement contractor.
On February 24, 1987, petitioner had entered into a contract with Remodelers for the installation of replacement windows, which required a $1,200 deposit. Although the agreement expressly acknowledged that the deposit was given to the contractor (Remodelers), it is undisputed that petitioner’s check was actually made payable to Window and thereafter deposited in Window’s account with respondent bank. When the labor and materials were never furnished, petitioner commenced the small claims proceeding to recover the down payment.
According to defendant, the summons incorrectly denominated defendant as doing business as Window, since the two are separate legal entities. This, defendant claims, was acknowledged by the arbitrator, who listed only Remodelers in the caption of the decision, with no reference to the appellation in the summons, "d/b/a Mr. Window”. Thus, asserts defendant, in view of the independent legal status of the two corporations, Window’s account was improperly restrained in satisfaction of the judgment against Remodelers. On this basis, defendant requests that the court exercise its inherent power to amend the caption to conform to the arbitrator’s determination, deleting any reference to Window.
Petitioner, on the other hand, takes the position that both Window and Remodelers are sufficiently related to support the execution as against Window. Both have the same office address, evidenced in part by a certified mail receipt to "I. Murray Remodelers, Inc. DBA Mr. Window Inc.”, which was received. She further states that she was instructed by defen *550 dant’s salesman that he was also acting on Window’s behalf and he directed her to make the check payable to Window. The salesman, it appears, acted on behalf of both companies, signing the contract for Remodelers and presenting petitioner with his business card, on which there was imprinted the name Window, at the same office address as that for Remodelers.
In view of the conflicting affidavits offered on the motion, the court directed both sides to appear for a hearing on the factual issues raised, including, inter alia, whether the corporate veil ought to be pierced under the circumstances, especially bearing in mind the simplified procedures and operative standard applicable in small claims proceedings, namely, "to do substantial justice between the parties according to the rules of substantive law”, without regard to usual rules of practice, procedure, pleading or evidence (CCA 1804). While it fully appears that Remodelers and Window, as corporations, are separate legal entities, it is equally apparent that petitioner believed they were interrelated to such an extent as to cast both in liability. The proof adduced at the hearing before this court, held February 3, 1988, reinforces this conclusion.
Contrary to defendant’s assertion, it does not appear that the arbitrator intended to drop Window in terms of liability. In view of the overwhelming proof of similarity of operation and management, this is unlikely. The testimony at the court hearing established that both corporations operate as a unit, one almost as a division or subsidiary of the other, with common officers, shareholders and employees. Even counsel’s description of the nature of the business supports this — Window manufactures and sells and Remodelers, a home improvement contractor, installs replacement windows. The principal of Window testified that, although he is sole owner of that corporation, he owns 50% of Remodelers and 13 other similar home improvement contractors. Money received as deposits on purchases and installations is received by Window and used by it in the regular course of its business.
Thus, there was a clear basis here for petitioner to proceed against both Window and Remodelers, the latter for breach of contract and the former for unjust enrichment. Under the circumstances, this court is not without power to remedy the irregularity in terms of the misnomer as to the party defendants. CCA 1814 provides a convenient and efficient means to correct errors with respect to the true name of the defendant when such becomes known. Subdivision (c) of the statute *551 imposes upon the Judge or arbitrator the duty to determine defendant’s "true name” and requires the clerk to "amend all prior proceedings and papers to conform to such determination, and all subsequent proceedings and papers shall be amended accordingly.” Subdivision (d) of CCA 1814 further directs that, on application to be relieved from a judgment (CPLR 5015), there shall be full disclosure of "any and all names in which it [defendant] was conducting business at the time of the transaction or occurrence upon which such judgment is based” and provides: "All subsequent proceedings and papers shall be amended to conform to such disclosure.”
The operative standard is aptly expressed by Professor Siegel in his Practice Commentaries as follows: "The standard, once again, should be whether there is anything at all about the way the defendant has referred to itself in conducting its business which could reasonably have led the claimant to name the defendant as it was in fact named in the initial Small Claims papers.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Part 3, CCA 1814, 1988 Pocket Part, at 176-177.)
In this case it appears that there was no disclosure of the different names prior to or during the hearing before the arbitrator on the merits, as is required. Had this been done, the irregularity could have been corrected at that time. Instead, defendant seeks to use the separate corporate identities to shield itself from what is clearly a legitimate consumer complaint and claim. In my view, to permit this would condone what borders upon the perpetration of a consumer fraud.
Under the circumstances, the failure or omission to disclose the true operation and corporate structure may not operate to divest the court of its statutory authority to correct the defect, consistent with the "substantial justice” standard provided by CCA 1804. The underlying purpose in such a proceeding is to effect a fair and just result, a remedial object plainly inconsistent with the technical arguments now advanced by defendant, who literally took the money and ran. No useful purpose would be served by relegating petitioner to commence a new proceeding as against Window, particularly where, as here, it admittedly is holding money to which it is not entitled and is part and parcel of a single, existing business operation.
Accordingly, the motion to direct respondent to deliver and pay over funds in the account in satisfaction of the levy is granted. In accordance with the clear policy and purpose *552 expressed in CCA 1814, the caption in the action and all papers and proceedings herein are amended, nunc pro tunc, including the summons, the judgment and the arbitrator’s decision, to correct the misnomer so as to reflect that the action had been commenced against I. Murray Remodelers, Inc., d/b/a/and Mr. Window, Inc.